**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL SIBERT ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 17-cv-02645 |
| ) | |
| DES PLAINES SCHOOL DISTRICT 62 ) | |
| ) | Jury Trial Demand |
| Defendant. ) | |

## **COMPLAINT**

Plaintiff, MICHAEL SIBERT, by and through his attorney, Daniel Q. Herbert of the Law Offices of Daniel Q. Herbert and Associates, and Jennifer W. Russell of J. Russell Law, LLC for his Complaint against Defendant, DES PLAINES SCHOOL DISTRICT 62, states as follows:

## **PARTIES**

1. Plaintiff Michael Sibert is a 50 year old male living in the city of Hampshire, County of Kane, State of Illinois.

2. Defendant Des Plaines School District 62 is headquartered in the city of Des Plaines, County of Cook, State of Illinois.

3. The school district is comprised of eight elementary schools, two middle schools, and one year-round school.

4. At all times relevant hereto, Defendant employed in excess of 500 employees and qualifies as an employer for purposes of Title VII.

## **JURISDICTION AND VENUE**

5. This matter arises under federal law, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq and under Title I of the Americans with Disabilities Act of 1990,

42 U.S.C. § 12101, *et seq* and Title V, Section 503 of the Act, 42 U.S.C. § 12203, accordingly this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1343 because the causes of action arise under federal law.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) as all acts and omissions giving rise to these claims occurred in the Northern District of Illinois.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on or about September 7, 2016. (Attached hereto as Exhibit A).

8. The EEOC issued Plaintiff a Right to Sue Letter on or about January 3, 2017 which was in receipt by Plaintiff on January 6, 2017. (Attached hereto as Exhibit B).

9. This suit was timely filed within 90 days of Plaintiff's receipt of his Right to Sue Letter.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff has been a teacher and employed by the Defendant, Des Plaines School District for approximately 20 years.

11. Plaintiff served in various positions within the District including Assistant Principal and special education teacher.

12. Throughout his employment with the Des Plaines school district, Plaintiff was held in the highest regard by parents, co-workers and students.

13. For four years, Plaintiff was a seventh grade special education teacher at Chippewa Middle School.

14. At all times relevant, Dr. Leah Kimmelman was the principal at Chippewa Middle School and Dr. Paul Hertel was Defendant's Associate Superintendent for Human Resources.

15. At all times relevant, Defendant knew or should have known Kimmelman was a problem employee, and created a hostile work environment for all individuals who reported to her, especially male employees.

16. On information and belief, Kimmelman has been investigated on several occasions stemming from complaints by parents, teachers and employees of the District.

17. Kimmelman would call Plaintiff names, would conduct biased and discriminatory investigations into school issues, favoring female teachers over male teachers and would single out Plaintiff for ridicule.

18. Kimmelman, knowing of Plaintiff's anxiety and mental health issues, told him he was going to have to leave Chippewa (where he had worked for several years), and while laughing and mocking him told Plaintiff that "[s]he was going to find a nice safe place" for him.

19. In the Spring of 2015, Kimmelman removed Plaintiff as a teacher at Chippewa.

20. At all times relevant, Plaintiff performed his job duties with proficiency and had received positive evaluations. In addition, Plaintiff's students consistently met or exceeded testing goals.

21. In August of 2015, Plaintiff suffered a nervous breakdown after he was forced to endure harassment, verbal attacks, false accusations, and gender discrimination while at Chippewa.

22. On or about November 16, 2015, Plaintiff contacted Ms. Ellen Swanson ("Swanson"), Assistant Superintendent for Student Services, indicating his intent to file a complaint against the District for various incidents involving his treatment by Kimmelman and Hertel, including complaints of discrimination based on his mental health status.

23. This is one of several communications Plaintiff had with District personnel regarding the discrimination and hostile work environment created by Kimmelman and Hertel.

24. When he contacted Swanson, he initially sought the opportunity to speak with the school board regarding the harassment, hostile work environment and treatment he has been enduring for the previous several years, but was told that there was a process in place to handle such complaints.

25. Plaintiff's mental health status was known to School District personnel who dismissed Plaintiff's representations and offered no assistance or other accommodation.

26. Ms. Swanson sent several letters to Plaintiff's home regarding the complaint process and meeting with Plaintiff.

27. Plaintiff was unaware that the process included repeatedly retelling and reliving his belittling experiences at Chippewa, repeated interrogation by attorneys from two different law firms, being contacted by members of the press regarding his "status," and assessment and critique of his mental health by non-medical professionals.

28. Plaintiff contacted Ms. Swanson to articulate to her that the mere fact of her sending him letter after letter was causing him increased anxiety and depression.

29. In January 2016, Plaintiff met with Ms. Swanson and Nelson Gray, who on information and belief was the Assistant Superintendent of Business Services. During this meeting Plaintiff explained the treatment he had endured while assigned at Chippewa that led to his breakdown.

30. Plaintiff explained to Swanson and Gray that the only thing he sought at that time was for the District to look into his treatment at Chippewa.

31. About a week later, Plaintiff was notified by the District's law firm (hereinafter "Firm #1") that they would be conducting a full investigation. It was plaintiff's understanding and belief that Firm #1's job was to limit the District's liability, and Plaintiff suffered a great amount of anxiety involving the process of the investigation and whether it would be conducted fairly.

32. Members of Firm #1 assured Plaintiff that he would be treated fairly, while at the same time forcing him to relive and retell the events that led to his breakdown, even though he had already detailed the many incidents to Swanson and Hertel.

33. Sometime thereafter, a member of Firm #1 reported to Plaintiff that they were hiring another outside law firm (hereinafter "Firm #2") to investigate Plaintiff's claims.

34. Plaintiff heard nothing for weeks and was expending his sick days, while waiting and worrying about, yet another law firm investigation.

35. During this period, Plaintiff received several calls from a local newspaper asking him to comment on his employment status.

36. Plaintiff contacted Firm #1 to find out why he was receiving these calls, and was told that certain negotiations had taken place presumably by the school board that produced a memo regarding Plaintiff that had become public record.

37. Because he was receiving repeat phone calls from the local newspaper, was involved with multiple investigations conducted by two law firms, Plaintiff's medical condition grew more severe.

38. Ultimately, Plaintiff was contacted and told that the lawyers from Firm #2 wanted to meet with him regarding the investigation.

39. Plaintiff sought the advice from Firm #1 and begged that Firm #2 investigators be told how much anxiety and stress the process of retelling his story caused him.

40. On or about April 19, 2016, Plaintiff was interrogated by two lawyers from Firm #2 for over several hours, and was forced to detail out the treatment he had endured at Chippewa for yet another time.

41. During the course of the interview, it became clear to Plaintiff that the investigating attorneys did not seem as interested in his treatment at Chippewa as they were attacking him about his mental health issues.

42. Firm #2's lawyers requested information about his mental health including what medications he had been prescribed and what medications he was taking, and for what reasons.

43. The events and stress of this day caused Plaintiff's mental health to deteriorate further.

44. On or about April 27, 2016, a report was generated regarding Firm #2's investigation, essentially dismissing every one of Plaintiff's complaints regarding his treatment at Chippewa.

45. The report also summarized that to the two attorney, *non-medical investigators*, Mr. Sibert appeared to them to be rather debilitated.  It is unclear why Firm #2 continued their interrogation of Plaintiff while also noting his debilitated state.

46. Firm #2 then recommended that if Plaintiff were to return to the classroom, he was required to complete an independent psychiatric evaluation to determine his fitness to teach in a classroom setting.

47. By letter of April 29, 2016, Plaintiff was informed that his sick days would expire on May 4, 2016 and that he had two options, to either undergo a fitness examination or apply for disability.

**COUNT I**
**GENDER DISCRIMINATION AND HARRASSMENT**

48. Plaintiff reasserts and realleges paragraphs 1 through 47 as if fully alleged herein.

49. At all times relevant hereto, Plaintiff was a male, which is a protected class under Title VII, and Defendant was aware that Plaintiff was male.

50. At all times relevant hereto, Plaintiff's performance met Defendant's legitimate expectations.

51. During the course of his employment, Defendant was treated unfairly by Defendant's employee and Plaintiff's supervisor, Kimmelman.

52. Kimmelman's treatment and harassment of male employees, including teachers was known by Defendant, yet they decided to look the other way and failed to take prompt, effective remedial action reasonably calculated to end the harassment as male after male employee left the District after suffering harassment, belittlement and discrimination by Kimmelman.

53. As a direct and proximate result of defendant's violations of Title VII and other unlawful employment practices, Plaintiff has suffered and continues to suffer severe and substantial damages. These damages include lost career opportunities, litigation expenses including attorney's fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress and other compensatory and punitive damages.

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against defendant, and that Plaintiff be awarded:

    a) An Order awarding plaintiff compensatory and punitive damages in an amount to be determined at trial;

    b) An Order awarding Plaintiff his costs, including reasonable attorneys' fees; and

    c) Such further relief as the Court deems necessary, just and proper.

## COUNT II
## AMERICANS WITH DISABILITIES ACT - HARRASSMENT

54. Plaintiff reasserts and realleges paragraphs 1 through 47 as if fully alleged herein.

55. At all relevant times, defendant was an employer as defined and codified in 42 U.S.C. §12111(5).

56. At all relevant times, Plaintiff was an employee of defendant as defined and codified in 42 §12111(4).

57. Plaintiff is a qualified individual with a disability, with a history of having a disability, and who was regarded as having a disability that substantially limited him in one or more major life activities.

58. Defendant was aware of Plaintiff's mental health disability.

59. Because of Plaintiff's anxiety and mental health issues, he was openly mocked by his supervisor and was told he was going to be transferred from the place he thrived at for several years to a "nice safe place."

60. Although fully aware of his anxiety and depression, defendant subjected Plaintiff to repeated and unnecessary high anxiety interrogations causing plaintiff's condition to worsen and deteriorate.

61. Based on the opinion of two lawyers, defendant required Plaintiff to undergo a psychological examination before he returned to work.

62. The aforesaid actions of the defendant constitute violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

63. As a direct and proximate result of defendant's actions, Plaintiff has suffered and continues to suffer severe and substantial damages. These damages include lost career opportunities, litigation expenses including attorney's fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress, emotional pain, deterioration of his existing disability, suffering, inconvenience, loss of enjoyment of life and other compensatory and punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Court grant Plaintiff:

(1) Economic damages in the form of lost time, lost wages, back pay, seniority, medical expenses and other pecuniary losses;

(2) Compensatory damages in an amount to be proven at trial;

(3) Attorney's fees and costs of this action;

(4) Punitive damages in an amount to be proven at trial;

(5) Other affirmative relief necessary to eradicate the effect of Defendant's unlawful employment practices; and granting such other relief as the Court deems necessary and proper.

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury.

Dated: April 6, 2017

        Respectfully submitted,

        /s/Daniel Q. Herbert
        Daniel Q. Herbert

        Daniel Q. Herbert (ARDC #6273940)
        Law Offices of Daniel Q. Herbert & Associates
        206 S. Jefferson, Suite 100
        Chicago, IL 60661
        (312) 655-7660


        /s/Jennifer W. Russell
        Jennifer W. Russell

        Jennifer W. Russell (ARDC #6238374)
        J. Russell Law, LLC
        206 S. Jefferson, Suite 100
        Chicago, IL 60661
        (312) 207-1220